**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| MICHAEL LOONSFOOT, Individually and for Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>STAKE CENTER LOCATING, LLC,<br><br>  Defendant. | Case No. _____<br><br>Judge:<br><br>Jury Trial Demanded |

**ORIGINAL CLASS ACTION COMPLAINT**

### SUMMARY

1.      Michael Loonsfoot ("Loonsfoot") brings this class action to recover unpaid wages and other damages from Stake Center Locating, LLC ("SCL").

2.      Loonsfoot worked for SCL as a Gas Tech, Area Manager, Trainer, and Lead Gas Tech in Illinois and Texas.

3.      Like the Putative Class Members (as defined below), Loonsfoot regularly worked more than 40 hours in a workweek.

4.      But SCL did not pay Loonsfoot and the Putative Class Members for all the hours they worked.

5.      Instead, SCL requires its employees, including Loonsfoot and the Putative Class Members, to work significant time "off the clock."

6.      SCL uniformly requires its employees, including Loonsfoot and the Putative Class Members, to underreport their work time by 30 minutes per 5 hours of work for so-called "meal breaks."

7.      Loonsfoot and the Putative Class Members are thus not paid for that time.

1

8.      But due to SCL's strict operational and productivity requirements, Loonsfoot and the Putative Class Members regularly worked during their unpaid "meal breaks" for SCL's predominant benefit.

9.      SCL's uniform meal break policy violates the Illinois Minimum Wage Law ("IMWL") by depriving Loonsfoot and the Putative Class Members of overtime wages for all overtime hours worked.

10.      Likewise, SCL's uniform meal break policy violates the Illinois Wage Payment and Collection Act ("IWPCA") by depriving Loonsfoot and the Putative Class Members of all their earned wages (at the rates agreed to by the Parties) for all hours worked.

11.      Further, to complete their job duties, Loonsfoot and the Putative Class Members are forced to perform compensable work before and/or after their shifts "off the clock."

12.      But SCL does not pay Loonsfoot and the Putative Class Members for this compensable "off the clock" work.

13.      Further, SCL paid its Utility Locators an allowance for "auto pay," which it uniformly failed to include in their regular rate of pay for purposes of calculating the proper overtime rate in violation of the IMWL and IWPCA.

14.      SCL's uniform "off the clock" and "auto pay" practice violates the IMWL by depriving Loonsfoot and the Putative Class Members of overtime wages for all overtime hours worked.

15.      Likewise, SCL's uniform "off the clock" and "auto pay" practice violates the IWPCA by depriving Loonsfoot and the Putative Class Members of all their earned wages (at the rates agreed to by the Parties) for all hours worked.

**JURISDICTION & VENUE**

16.      This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

17.    Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of Loonsfoot's Putative Class and SCL are citizens of different states (indeed, Loonsfoot is domiciled in Illinois, whereas SCL is domiciled in Utah and North Carolina); and (c) Loonsfoot's Putative Class exceeds 100 members.

18.    This Court has specific personal jurisdiction over SCL with respect to this action because SCL employed Loonsfoot and the Putative Class Members in Illinois.

19.    Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

20.    Specifically, SCL employed Loonsfoot in and around St. Clair County, Illinois, which is in this District and Division.

21.    On weeks in which Loonsfoot worked in Illinois, he received auto pay which was not calculated into his regular rate of pay.

## PARTIES

22.    Loonsfoot worked for SCL as a Gas Tech, Lead Gas Tech, Area Manager, and Trainer in Illinois and Texas from approximately December 2021 until June 2023.

23.    Specifically, Loonsfoot worked as a Gas Tech (also known as a "Utility Locator") from December 20, 2021 until March 1, 2022; an Area Manager from March 1, 2022 until June 15, 2022; a Trainer from June 15, 2022 until January 2023; and a Lead Gas Tech (also known as a "Field Manager") from January 2023 until June 23, 2023.

24.    Other than his time working for SCL as an Area Manager (from March 1, 2022 until June 15, 2022),[1] throughout his employment, SCL classified Loonsfoot as non-exempt and paid him on an hourly basis.

---

[1] While working for SCL as an Area Manager, SCL classified Loonsfoot as exempt and paid him a salary with no overtime wages.

25.    Throughout his employment, SCL subjected Loonsfoot to its common practice of requiring him to clock out for 30 minutes every 5 hours worked for so-called "meal breaks."

26.    But throughout his employment, SCL required Loonsfoot to perform compensable work during his "off the clock" meal breaks without pay.

27.    Similarly, throughout his employment, SCL required Loonsfoot to work "off the clock" before and after his shifts (without pay) to complete his job duties for SCL's predominant benefit.

28.    Loonsfoot received a taxable automobile allowance as compensation that was not included in his regular rate of pay.

29.    Likewise the Putative Class Members received a taxable automobile allowance as compensation that SCL failed to include in their regular rate of pay.

30.    Pursuant to FED. R. CIV. P. 23, Loonsfoot brings this class action on behalf of himself and other similarly situated hourly, non-exempt SCL employees in Illinois.

31.    SCL uniformly subjects its hourly, non-exempt employees to its "meal breaks" policy and "off the clock" work practices.

32.    Thus, SCL uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek, including those hours worked "off the clock," in violation of the IMWL.

33.    Likewise, SCL uniformly deprives these employees of earned wages (at their agreed hourly rates of pay) for all hours worked, including those hours worked "off the clock," in violation of the IWPCA.

34.    The class of similarly situated employees under the IMWL is defined as:

   **All hourly employees who worked for SCL in Illinois at any time during the past 3 years ("IMWL Class Members" or "IMWL Class").**

35.    The class of similarly situated employees under the IWPCA is defined as:

> **All hourly employees who worked for SCL in Illinois at any time during the past 10 years ("IWPCA Class Members" or "IWPCA Class").**

36.    The IMWL Class Members and the IWPCA Class Members are collectively referred to as the "Putative Class Members."

37.    SCL is a Utah limited liability company that maintains its headquarters and principal place of business in Greensboro, North Carolina.

38.    SCL may be served with process by serving its registered agent: **Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703**.

## FACTS

39.    SCL bills itself as a utility "locating powerhouse"[2] that provides "utility locating services across the country[,]"[3] including in Illinois.

40.    Specifically, SCL provides utility locating services to utility owners and operators across the country.

41.    To meet its business objective, SCL hires employees (including Loonsfoot and the Putative Class Members) to work as Gas Techs, Lead Gas Techs, Utility Locators, Field Managers, and/or Trainers and provide utility locating services to its clients.

42.    SCL uniformly classifies these employees, including Loonsfoot and the Putative Class Members, as non-exempt and pays them on an hourly basis.

43.    While exact job duties and precise locations may differ, Loonsfoot and the Putative Class Members are subjected to SCL's same or similar illegal pay policies for similar work.

44.    For example, Loonsfoot worked for SCL as a Gas Tech, Lead Gas Tech, Area Manager, and Trainer in Illinois and Texas from approximately December 2021 until June 2023.

---

[2] https://www.stakecenter.com/ (last visited August 15, 2023).
[3] https://www.stakecenter.com/service-areas/ (last visited June 29, 2023).

45.    Loonsfoot worked as a Gas Tech (also known as a "Utility Locator") from December 20, 2021 until March 1, 2022; an Area Manager from March 1, 2022 until June 15, 2022; a Trainer from June 15, 2022 until January 2023; and a Lead Gas Tech (also known as a "Field Manager") from January 2023 until June 23, 2023.

46.    Other than his time working for SCL as an Area Manager (from March 1, 2022 until June 15, 2022),[4] throughout his employment, SCL classified Loonsfoot as non-exempt and paid him on an hourly basis.

47.    Specifically, SCL agreed to pay Loonsfoot $21.50/hour (plus overtime) for all time worked as a Gas Tech; $25.50/hour (plus overtime) while working as a Trainer; and $26.50/hour (plus overtime) while working as a Lead Gas Tech.

48.    As a Gas Tech (also known as a "Utility Locator") and Lead Gas Tech (also known as a "Field Manager"), Loonsfoot's primary responsibilities included locating network lines for gas, electrical, cable, and communications companies and identifying whether the utility owner's underground utilities conflict with proposed excavation locations.

49.    As a Trainer, Loonsfoot's primary responsibilities included training newly hired Gas Techs/Utility Locators how to use SCL's utility locating equipment.

50.    Throughout his employment, SCL required Loonsfoot to submit his work time for SCL's approval via SCL's uniform ticketing system program.

51.    Throughout his employment SCL required Loonsfoot to underreport his hours worked by 30 minutes per 5 hours worked for so-called "meal breaks."

---

[4] While working for SCL as an Area Manager, SCL classified Loonsfoot as exempt and paid him a salary with no overtime wages.

52.     But throughout his employment, due to SCL's strict operational and productivity requirements, Loonsfoot regularly worked during his unpaid "meal breaks" for SCL's predominant benefit.

53.     Similarly, throughout his employment, SCL required Loonsfoot to work "off the clock" before and after his shifts to meet SCL's strict operational and productivity requirements.

54.     But throughout his employment, SCL did not pay Loonsfoot for this compensable "off the clock work."

55.     Loonsfoot and the Putative Class Members perform the same or similar job duties.

56.     Loonsfoot's and the Putative Class Members' primary responsibilities include locating network lines, use SCL's utility locating equipment for gas, electrical, cable, and communications companies throughout Illinois.

57.     Loonsfoot's and the Putative Class Members' job duties are routine and governed by SCL's policies and procedures.

58.     Loonsfoot and the Putative Class Members identify whether the utility owner's underground utilities conflict with proposed excavation locations.

59.     Loonsfoot and the Putative Class Members mark the location of underground utilities to avoid damage in the course of excavation and construction for SCL's clients.

60.     Loonsfoot and the Putative Class Members use the same or similar SCL company-issued equipment to perform their daily duties (e.g., a frequency wand, company cell phone, and company computer).

61.     SCL uniformly requires Loonsfoot and the Putative Class Members to follow its uniform timekeeping policies and procedures.

62.     SCL uniformly requires Loonsfoot and the Putative Class Members to submit their work time (and locations) to SCL for approval via SCL's uniform ticketing system program.

63.     SCL uniformly subjects Loonsfoot and the Putative Class Members, to the same policies, procedures, and operational and productivity requirements.

64.     Indeed, SCL uniformly requires Loonsfoot and the Putative Class Members to complete their work tickets in a timely manner per SCL's uniform policy.

65.     And SCL closely supervises and tracks Loonsfoot's and the Putative Class Members' productivity to ensure they comply with SCL's uniform expectations.

66.     In fact, because labor costs are SCL's greatest expense, SCL closely monitors the hours and overtime Loonsfoot and the Putative Class Members work through its uniform ticketing system program.

67.     And SCL uniformly pressures and expects Loonsfoot and the Putative Class Members to complete as many tickets as possible.

68.     SCL also uniformly subjects Loonsfoot and the Putative Class Members to SCL's common unpaid meal break policy.

69.     Specifically, SCL uniformly requires Loonsfoot and the Putative Class Members to underreport their hours worked by 30 minutes per 5 hours worked for so-called "meal breaks," regardless of whether they actually receive a full, uninterrupted, 30-minute meal break.

70.     If Loonsfoot and the Putative Class Members do not underreport their hours worked to account for these so-called "meal breaks," SCL will not approve their timesheets.

71.     Indeed, SCL simply assumes Loonsfoot and the Putative Class Members actually receive *bona fide* meal breaks.

72.     But Loonsfoot and the Putative Class Members do not actually receive *bona fide* meal breaks.

73.     Instead, due to SCL's uniform, strict operational and productivity requirements (and SCL's close monitoring of the same), Loonsfoot and the Putative Class Members are forced to

substantially perform their regular utility locating job duties and responsibilities during their unpaid "meal breaks" to complete their assigned heavy workloads.

74.    Specifically, during their unpaid "meal breaks," Loonsfoot and Putative Class Members regularly perform work-related tasks, such as completing tickets, driving from one project to another, taking/making calls to SCL's clients, and/or route planning.

75.    Because of these constant work-related tasks, Loonsfoot and the Putative Class Members are not free to engage in personal activities during their unpaid "meal breaks."

76.    Rather, during their unpaid "meal breaks," Loonsfoot and the Putative Class Members are forced to substantially perform their regular utility locating job duties and responsibilities.

77.    Thus, Loonsfoot and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for SCL's—not these employees'—predominant benefit.

78.    The work performed off the clock by Loonsfoot and the Putative Class Members was similar if not the same.

79.    This unpaid time is compensable under the IMWL because SCL knew, or should have known, that (1) Loonsfoot and the Putative Class Members were performing unpaid work during their meal breaks, (2) they were interrupted or subject to interruptions with work duties during any attempted meal break, (3) they were not completely relieved of all duties during their meal breaks, (4) they entirely skipped their meal breaks due to work demands, (5) the meal breaks were less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal break because of constant interruptions, and/or (7) they spent their unpaid meal breaks substantially performing their regular utility locating job duties for SCL's predominant benefit.

80.    This unpaid time is also compensable under the IWPCA because SCL agreed to pay Loonsfoot and the Putative Class Members set hourly rates of pay for all hours worked, and SCL

failed to pay these employees all their earned wages for all work performed, including the work they performed during these on-duty "meal breaks."

81.    SCL failed to exercise its duty as Loonsfoot's and the Putative Class Members' employer to ensure these employees were not performing work that SCL did not want performed during their unpaid "meal breaks."

82.    And SCL knew Loonsfoot and the Putative Class Members regularly worked during their unpaid "meal breaks."

83.    Using timecard details and GPS data tracked by SCL's uniform ticket system program, SCL has the ability to easily determine whether Loonsfoot and the Putative Class Members were working "off the clock" during their unpaid "meal breaks."

84.    In fact, SCL management level employees have the ability to determine if Loonsfoot and the Putative Class Members are clocked out for lunch and/or if their vehicles are moving (and, therefore, they are working or traveling between jobsites).

85.    And Loonsfoot and the Putative Class Members repeatedly complained to SCL management and supervisors about being forced to work during their unpaid "meal breaks."

86.    SCL's Human Resources department routinely received complaints from its Utility Locators that they could not complete their assigned work tickets in under 40 hours each workweek as SCL required.

87.    Loonsfoot and the Putative Class Members would be written up by SCL management if they failed to record a 30 minute meal break.

88.    Despite accepting the benefits, SCL did not pay Loonsfoot and the Putative Class Members for the compensable work they performed during their "meal breaks."

89.     Thus, under SCL's uniform unpaid meal break policy, Loonsfoot and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work over 40 hours in violation of the IMWL.

90.     Likewise, under SCL's uniform unpaid meal break policy, Loonsfoot and the Putative Class Members are denied earned wages (at their agreed hourly rates) for those on-duty "meal breaks" during workweeks in which they work under 40 hours in violation of the IWPCA.

91.     In addition to excluding time from these employees' wages for so-called "meal breaks," SCL also regularly forced Loonsfoot and the Putative Class Members to work "off the clock" (without pay) before and/or after their shifts.

92.     Specifically, to meet SCL's uniform, strict operational and productivity requirements, Loonsfoot and the Putative Class Members are necessarily forced to work "off the clock" before and/or after their shifts to complete their utility locating job duties and responsibilities.

93.     Like Loonsfoot's and the Putative Class Members' "off the clock" meal breaks, SCL does not pay these employees for their pre- and post-shift "off the clock" work.

94.     But like the utility locating work Loonsfoot and the Putative Class Members routinely perform during their "off the clock" unpaid "meal breaks," their pre- and post-shift "off the clock" work is compensable.

95.     Indeed, before and/or after their shifts, Loonsfoot and the Putative Class Members are forced to substantially perform their regular utility locating job duties "off the clock" for SCL's— not these employees'—predominant benefit.

96.     This pre and post shift work for Loonsfoot and the Putative Class Members included fielding calls from SCL's customers and preparing routes.

97.     On average, Loonsfoot and the Putative Class Members perform 2-4 hours a day of compensable work "off the clock" before and/or after their shifts (without pay).

11

98. Thus, under SCL's uniform "off the clock" practice, Loonsfoot and the Putative Class Members are denied overtime pay for their compensable "off the clock" work during workweeks in which they worked over 40 hours in violation of the IMWL.

99. Likewise, under SCL's uniform "off the clock" practice, Loonsfoot and the Putative Class Members are denied earned wages (at their agreed hourly rates) for their compensable "off the clock" work during workweeks in which they work under 40 hours in violation of the IWPCA.

100. Loonsfoot worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

101. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

102. Indeed, throughout the relevant period, Loonsfoot and the Putative Class Members typically worked 10+ hours a day, for up to 7 days a workweek—not including the work they performed "off the clock" during their unpaid meal breaks and/or before and after their shifts.

103. And Loonsfoot and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks and/or before and after their shifts to complete their utility locating job duties and responsibilities for SCL's predominate benefit.

104. As a result, Loonsfoot and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

105. SCL uniformly provided a taxable automobile allowance to Loonsfoot and the Putative Class Members which it failed to include in their regular rate of pay.

106. SCL included the automobile allowance in the total taxable amount on each paystub.

107. As a result, SCL represents to Loonsfoot and the Putative Class Members that the automobile allowance constitutes as part of their wages.

108. SCL represents to the IRS that the automobile allowance is wages.

109.    Although SCL classifies the automobile allowance as wages, it failed to include the automobile allowance in the regular rate calculation for purposes of determining the overtime rate.

110.    SCL knowingly classified the automobile allowance as wages.

111.    SCL knew that all wages were considered remuneration for purposes of the overtime rate.

112.    SCL controlled the paystubs.

113.    SCL controlled the tax classifications.

114.    SCL knowingly or with reckless disregard failed to include the automobile allowance in the regular rate for purposes of determining the correct overtime rate.

115.    As a result of SCL's actions, Loonsfoot and the Putative Class Members were paid less overtime than required by the IMWL and IWPCA.

116.    When Loonsfoot and the Putative Class Members work more than 40 hours in a workweek, SCL does not pay them overtime wages at rates not less than 1.5 times their regular rates for all overtime hours worked because SCL fails to include time these employees worked "off the clock" during their unpaid meal breaks and/or before and after their shifts in their total number of hours worked in a given workweek in violation of the IMWL.

117.    Likewise, when Loonsfoot and the Putative Class Members work fewer than 40 hours in a workweek, SCL does not pay them all their earned wages (at their agreed hourly rates) for all hours worked because SCL fails to include time these employees worked "off the clock" during their unpaid meal breaks and/or before and after their shifts in their total number of hours worked in a given workweek in violation of the IWPCA.

## CLASS ACTION ALLEGATIONS

118.    Loonsfoot incorporates all other paragraphs by reference.

119.    Loonsfoot brings his Illinois wage law claims as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

120.    The Putative Class Members were victimized by SCL's unpaid meal break policy and "off the clock" work practice, which are in willful violation of Illinois wage laws.

121.    Other Putative Class Members worked with Loonsfoot and indicated they were paid in the same manner, performed similar work, and were subject to SCL's unpaid meal break policy and "off the clock" work practice.

122.    Based on his experience with SCL, Loonsfoot is aware SCL's illegal practices were imposed on the Putative Class Members.

123.    The Putative Class Members are similarly situated in all relevant respects.

124.    Even if their precise job titles, or exact duties, and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime pay.

125.    Rather, the Putative Classes are held together by SCL's unpaid meal break policy and "off the clock" work practice, both of which systematically deprived Loonsfoot and the Putative Class Members of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek.

126.    Similarly, SCL's automobile pay policy was not included in Loonsfoot's or the Putative Class Members' regular rate of pay.

127.    SCL's automobile pay policy was applied regardless of Loonsfoot's or the Putative Class Members' job titles, duties, or location as long as they were classified as non-exempt.

128.    SCL's failure to pay earned wages and overtime wages as required by Illinois law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

129.    SCL's records reflect the number of hours the Putative Class Members recorded they worked each workweek.

130.    SCL's records also reflect the number of hours the Putative Class Members *actually* worked each workweek.

131.    And SCL's records reflect that it did not pay the Putative Class Members for all hours they performed compensable work.

132.    The back wages owed to Loonsfoot and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

133.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SCL's records, and there is no detraction from the common nucleus of liability facts.

134.    Therefore, the issue of damages does not preclude class treatment.

135.    Loonsfoot's experiences are therefore typical of the experiences of the Putative Class Members.

136.    Loonsfoot has no interest contrary to, or in conflict with, the Putative Class Members.

137.    Like each Putative Class Member, Loonsfoot has an interest in obtaining the unpaid wages owed under Illinois law.

138.    A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

139.    Absent this class action, many Putative Class Members will not obtain redress for their injuries, and SCL will reap the unjust benefits of violating Illinois wage laws.

140.    Further, even if some of the Putative Class Members could afford individual litigation against SCL, it would be unduly burdensome to the judicial system.

141.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

142.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

143.    Among the common questions of law and fact are:

a.    Whether SCL engaged in a policy and practice of requiring the Putative Class Members to underreport their daily work time for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of Illinois wage laws;

b.    Whether SCL knew, or had reason to know, the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of Illinois wage laws;

c.    Whether SCL's unpaid meal break policy deprived the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of Illinois wage laws;

d.    Whether SCL engaged in a policy and practice of requiring the Putative Class Members to work "off the clock" before and/or after their shifts without pay in violation of Illinois wage laws;

e.    Whether SCL knew, or had reason to know, the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" before and/or after their shifts in violation of Illinois wage laws;

f.    Whether SCL's unpaid "off the clock" work practice deprived the Putative Class Members of pay for time worked before and/or after their shifts in violation of Illinois wage laws;

g.  Whether SCL failed to pay the Putative Class Members all their earned wages (at their agreed hourly rates) for all hours worked, including hours worked "off the clock" during their unpaid meal breaks and/or before and after their shifts, in violation of the IWPCA; and

h.  Whether SCL failed to pay the Putative Class Members premium overtime wages for all hours worked after 40 in a workweek, including hours worked "off the clock" during their unpaid meal breaks and/or before and after their shifts, in violation of the IMWL.

144.  Loonsfoot knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

145.  SCL has been sued for a similar alleged off the clock violation on at least two occasions.

146.  As part of its regular business practices, SCL intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating Illinois wage laws with respect to Loonsfoot and the Putative Class Members.

147.  SCL's illegal policies deprived Loonsfoot and the Putative Class Members of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek, which they are owed under Illinois law.

<u>**COUNT I**</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
PURSUANT TO 820 ILCS 105/1, *ET SEQ.*
(IMWL CLASS)**

148.  Loonsfoot incorporates all other paragraphs by reference.

149.  Loonsfoot brings his IMWL claim on behalf of himself and the IMWL Class Members pursuant to FED. R. CIV. P. 23.

150.     The conduct alleged violates the IMWL (820 ILCS 105/1, *et seq.*).

151.     At all relevant times, SCL was an "employer" within the meaning of the IMWL.

152.     At all relevant times, SCL employed Loonsfoot and the IMWL Class Members as covered "employees" within the meaning of the IMWL.

153.     The IMWL requires employers, like SCL, to pay employees, including Loonsfoot and the IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

154.     Loonsfoot and the IMWL Class Members are entitled to overtime pay under the IMWL.

155.     SCL violated, and is violating, the IMWL by failing to pay Loonsfoot and the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek, including hours worked "off the clock" during these employees' unpaid "meal breaks" and/or before and after their shifts. *See* 820 ILCS 105/4a.

156.     SCL's unlawful conduct harmed Loonsfoot and the IMWL Class Members by depriving them of the overtime wages they are owed.

157.     Accordingly, Loonsfoot and the IMWL Class Members are entitled to recover their unpaid overtime compensation owed from the 3 years prior to the filing of this Complaint, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## COUNT II

### FAILURE TO PAY ALL WAGES UNDER THE IWPCA
### PURSUANT TO 820 ILCS 115/1, *ET SEQ.*
### (IWPCA CLASS)

158.     Loonsfoot incorporates all other paragraphs by reference.

159.    Loonsfoot brings his IWPCA claim on behalf of himself and the IWPCA Class Members pursuant to FED. R. CIV. P. 23.

160.    The conduct alleged violates the IWPCA (820 ILCS 115/1, *et seq.*).

161.    At all relevant times, SCL was an "employer" within the meaning of the IWPCA.

162.    At all relevant times, SCL employed Loonsfoot and the IWPCA Class Members as covered "employees" within the meaning of the IWPCA.

163.    The IWPCA requires employers, like SCL, to pay employees, including Loonsfoot and the IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

164.    During the course of their employment, SCL agreed to pay Loonsfoot and each IWPCA Class Member an hourly rate for all the hours of work they performed.

165.    Loonsfoot and each IWPCA Class Member accepted SCL's offer.

166.    But during the course of their employment, SCL failed to pay Loonsfoot and the IWPCA Class Members for all the time they worked at the rates SCL agreed to pay them because SCL failed to include time these employees worked "off the clock" during their unpaid meal breaks and/or before and after their shifts in their total number of hours worked in a given workweek.

167.    SCL violated, and is violating, the IWPCA by failing to pay Loonsfoot and the IWPCA Class Members all their earned wages (at the rates SCL agreed to pay them) for all the hours of work they performed for SCL's benefit, including the work they performed "off the clock" during their unpaid meal breaks and/or before and after their shifts.

168.    SCL's unlawful conduct harmed Loonsfoot and the IWPCA Class Members by depriving them of the earned wages they earned and are owed.

169.    Accordingly, Loonsfoot and the IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates) owed from the 10 years prior to the filing of this

Complaint, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

170.    Loonsfoot demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Loonsfoot, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

b.    An Order appointing Loonsfoot and his counsel to represent the interests of the Putative Classes;

c.    An Order finding SCL liable to Loonsfoot and the IMWL Class Members for unpaid overtime wages owed under the IMWL, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

d.    An Order finding SCL liable to Loonsfoot and the IWPCA Class Members for unpaid "straight time" wages owed under the IWPCA, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

e.    Judgment awarding Loonsfoot and the Putative Class Members all unpaid wages, treble damages, monthly statutory damages, and any other penalties available under the IMWL and IWPCA;

f.    An Injunction precluding SCL from violating the IWPCA;

g.    An Order awarding attorney's fees, costs, and expenses;

      h.        Pre- and post-judgment interest at the highest applicable rates; and

      i.        Such other and further relief as may be necessary and appropriate.

Dated: September 21, 2023

Respectfully submitted,

By: */s/ Douglas M. Werman*

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
312-419-1008 – Telephone
312-419-1025 – Facsimile
dwerman@flsalaw.com
msalas@flsalaw.com

Michael A. Josephson*
Andrew W. Dunlap*
Richard M. Schreiber
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF AND
THE PUTATIVE CLASS MEMBERS**