IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL LOONSFOOT, *Individually and for Others Similarly Situated* | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 23-CV-3171-DWD<br>)<br>) |
| STAKE CENTER LOCATING, LLC, | )<br>) |
| Defendant. | ) |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Michael Loonsfoot filed the instant case, a purported class action, seeking to recover unpaid wages and other damages from his former employer, Stake Center Locating, LLC ("SCL"). Plaintiff brings two claims for relief: (1) a claim under the Illinois Minimum Wage Law ("IMWL") for failure to pay overtime wages and (2) a claim under the Illinois Wage Payment and Collection Act ("IWPCA") for failure to pay all *agreed upon* wages. In his Complaint, Loonsfoot alleges that this Court has original subject matter jurisdiction pursuant to the Jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

In response to the Complaint, SCL filed a Motion for Judgment on the Pleadings, seeking a Judgment on Plaintiff's IMWL claim (regarding the "auto allowance") and on Plaintiff's entire IWPCA claim. (Doc. 29). Perplexingly, eighteen days after SCL filed its Motion for Judgment on the Pleadings, Loonsfoot filed a Motion to Dismiss, *his own*

*Complaint*, for lack of subject matter jurisdiction.[1] SCL opposes the motion, arguing that subject matter jurisdiction clearly exists, and that Plaintiff is only seeking dismissal to avoid a ruling on the pending Motion for Judgment on the Pleadings.[2] The Court therefore is in the unusual position of resolving a motion to dismiss for lack of subject matter jurisdiction, filed by the party that invoked this Court's jurisdiction in the first place.

## I.  BACKGROUND

SCL is a limited liability company that provides utility locating services across the country.  Plaintiff is a former SCL employee. He worked as a Gas Tech, Lead Gas Tech, Area Manager, and Trainer in Illinois and Texas from approximately December 2021 until June 2023.

Plaintiff initiated this lawsuit on September 21, 2023, on behalf of himself and a putative class of similarly situated employees. Plaintiff claims that SCL failed to pay employees for compensable "off the clock" work (work employees were allegedly required to complete during their meal breaks, as well as before and after work). In addition, Plaintiff claims that SCL paid its employees an allowance for "auto pay," but failed to include that amount in each employee's regular rate of pay for purposes of calculating the appropriate amount of overtime pay. In Count I, Plaintiff claims that SCL's "off the clock" and "auto pay" practice violates the IMWL by depriving employees

---

[1] Plaintiff fails to identify a rule under which his motion is made. The Court therefore construes Plaintiff's motion as a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

[2] SCL filed its answer on November 16, 2023. (Doc. 21). Given the procedural posture of the case, Plaintiff cannot unilaterally dismiss the action, *see* Fed. R. Civ. P. 41, and SCL declined Plaintiff's request to consent to dismissal of the action (Doc. 40, pp. 2-3).

of overtime wages. In Count II, Plaintiff claims that SCL's "off the clock" and "auto pay" practice violates the IWPCA by depriving employees of all their earned wages at the rates agreed to by the parties for all hours worked.

In his Complaint, Plaintiff contends that jurisdiction is proper under CAFA because the proposed class has more than 100 members, the minimal diversity requirement is met,[3] and the amount in controversy exceeds $5 million dollars. (Doc. 1). On December 6, 2023, the Court ordered Plaintiff to submit supplemental briefing clarifying SCL's citizenship. (Doc. 22). Plaintiff responded, filing a supplemental memorandum stating that SCL's sole member, S&N Communications, Inc. ("S&N"), is a citizen of North Carolina.[4]

SCL answered the Complaint (Doc. 21) and filed a Motion for Judgment on the Pleadings (Doc. 29). Plaintiff then filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 33) and a Motion to Prioritize Jurisdictional Dismissal (Doc. 34), asking the Court to resolve the question of federal subject matter jurisdiction before ruling on the Motion for Judgment on the Pleadings. In his Motion to Dismiss for Lack of Jurisdiction, Plaintiff does not present any newly discovered facts demonstrating that his original allegations

---

[3] The Complaint alleges that Plaintiff is domiciled in Illinois and that SCL, a limited liability company, is domiciled Utah and North Carolina.

[4] The Court *sua sponte* ordered Plaintiff to identify each of SKL's members and the citizenship of each of those members. (Doc. 9). *See Camico Mut. Ins. Co. v. Citizens Bank,* 474 F.3d 989, 992 (7th Cir. 2007) (the citizenship of an LLC is the citizenship of each of its members). Plaintiff filed a supplemental pleading indicating that SCL's sole member is S&N Communications, Inc. (S&N), and that S&N is incorporated and has its principal place of business in North Carolina. (Doc. 23). As is discussed more fully below, however, when jurisdiction is premised on CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Thus, the Court need not consider S&N's citizenship. Instead, in evaluating whether minimal diversity is present under CAFA, SCL will be deemed a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

as to the presence of CAFA jurisdiction were mistaken. Instead, Plaintiff claims that SCL's Answer demonstrates that subject matter jurisdiction is lacking. Specifically, Plaintiff notes that the Complaint (Doc. 1, ¶ 16) includes a general allegation that "[t]his Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d)." Additionally, the Complaint (Doc. 1, ¶ 17) alleges that the amount in controversy exceeds $5,000,000, at least one member of the Putative Class and SCL are citizens of different states, and the Putative Class exceeds 100 members. In answering the Complaint, however, SCL denied these allegations. According to Plaintiff, these denials demonstrate that jurisdiction is lacking because "the information necessary to determine whether this Court has subject matter jurisdiction is solely in [SCL's] hands." (Doc. 33, p. 2).[5]

SCL responds to this argument, explaining that SCL denied the general allegation that jurisdiction is proper under CAFA (Doc. 1, ¶ 16) because it is a legal conclusion. (Doc. 40, p. 2). As to the allegations regarding minimal diversity, the amount in controversy, and the size of the class (Doc. 1, ¶ 17), SCL explains that SCL: (1) Admitted that SCL is domiciled in Utah and North Carolina; (2) admitted that Plaintiff is domiciled in Illinois; and (3) "denied the rest of the factual allegations, simply because [SCL] contends that class treatment is inappropriate." (Doc. 40, p. 2) (*See also* (Doc. 40, p. 6) ("In denying the allegations in Paragraph 17, SCL was simply signaling that it disagrees that class treatment is appropriate, or that the Plaintiff and the class are entitled to $5 million in

---

[5] Plaintiff provides no legal authority for the contention that a Defendant's denial of an allegation in an answer is controlling on any issue, including the existence of subject matter jurisdiction.

damages.")). SCL's response also maintains that, as defined by Plaintiff in the Complaint, the proposed IMWL class and the proposed IWPCA class consist of more than 100 members. Moreover, SCL contends, when accepting Plaintiff's allegations regarding off the clock work as true, the alleged amount of unpaid wages exceeds $5 million in damages. SCL's contentions are supported by the Declaration of Scott McCullough, SCL's Director of Human Resources, including a spreadsheet summarizing a census of SCL's current and former employees (members of the putative class) and the alleged amount of unpaid wages as defined by Plaintiff.

## II. LEGAL STANDARD

Although any party may seek dismissal of a case at any time for lack of subject matter jurisdiction, the Seventh Circuit has noted that such motions are "unseemly" when filed by the party that invoked the court's jurisdiction in the first place. *Napoleon Hardwoods, Inc. v. Professionally Designed Benefits, Inc.*, 984 F.2d 821, 822 (7th Cir. 1993); *Feezor v. Excel Stockton, LLC,* 2013 WL 2485623, at *12 (E.D. Cal. June 10, 2013). Nevertheless, it is the responsibility of a court to make an independent evaluation of whether subject matter jurisdiction exists in every case, *Foster v. Hill*, 497 F.3d 695, 696–97 (7th Cir. 2007).

Given Loonsfoot's unusual litigation tactic[6] (and SCL's response to the same), Loonsfoot, the party that initially invoked this court's jurisdiction, has become the party opposing federal jurisdiction and SCL has become the proponent of federal jurisdiction.

---

[6] Notably, Loonsfoot is not alleging that he has discovered new information demonstrating that his original jurisdictional allegations were incorrect. Instead, Loonsfoot contends that, given the denials in SCL's answer, subject matter jurisdiction must be lacking.

Given this role reversal, the Court believes it is appropriate to employ authority addressing burden allocation in the context of a motion to remand for lack of subject matter jurisdiction. Applying that case law, SCL, as the proponent of federal jurisdiction, bears the burden of establishing the general requirements of CAFA jurisdiction. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012).

Further, because Loonsfoot is contesting the amount in controversy, SCL must "prove those jurisdictional facts by a preponderance of the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (quotation marks omitted). This means that SCL must "show not only what the stakes of the litigation *could* be, but also what they *are* given the plaintiff's actual demands. The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (alterations in original) (quotation marks omitted). In other words, SCL "does not need to establish what damages the proposed class will recover, but only how much is in controversy between the parties. This burden thus is a pleading requirement, not a demand for proof." *Bloomberg,* 639 F.3d at 763 (citations omitted). "A good-faith estimate is acceptable if it is plausible and adequately supported by the evidence." *Id.*

The Seventh Circuit has identified several acceptable sources of information for establishing the amount in controversy, including "contentions, interrogatories or admissions in state court;" "calculation from the complaint's allegations;" "reference to the plaintiff's informal estimates or settlement demands;" and "affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's

6

demands." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006). However, this "list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint." Once SCL has "explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Spivey*, 528 F.3d at 986 (citations omitted).

### III. DISCUSSION

Under CAFA, federal courts have jurisdiction to hear a class action if the proposed class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 625 (7th Cir. 2023) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

Here, there is no dispute that the parties are minimally diverse. SCL is a Utah LLC with its principal place of business in North Carolina. (Doc. 1 at ¶ ¶ 17, 37). Therefore, under CAFA, SCL is a citizen of Utah and North Carolina.[7] Loonsfoot, a natural person, is a citizen of Illinois. (Doc. 1 at ¶ 17). As such, the requisite minimal diversity exists.

---

[7] Normally, the Court considers a limited liability company's citizenship to be the citizenship of its members for purposes of diversity jurisdiction. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). But under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Although the Seventh Circuit does not appear to have expressly considered the issue, "[c]ourts have widely held that an LLC is an "unincorporated association" within the meaning of section 1332(d)(10)." *Calchi v. TopCo Assocs., LLC*, 676 F. Supp. 3d 604, 612 (N.D. Ill. 2023) (collecting cases). Accordingly, "for purposes of determining subject matter jurisdiction under [CAFA], a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10)." *Ferrell v. Express Check Advance of S.C. LLC*, 591 F.3d 698, 699–700 (4th Cir. 2010). Further, even if the Court were to determine SCL's citizenship under CAFA using the citizenship of its members, minimal diversity would still be present because SCL would be deemed a citizen

The record also reflects that the proposed class exceeds 100 class members. Plaintiff's proposed IMWL class consists of "[a]ll hourly employees who worked for SCL in Illinois at any time during the past three years." (Doc. 1, ¶ 34), and Plaintiff's proposed IWPCA class consists of "[a]ll hourly employees who worked for SCL in Illinois at any time during the past 10 years." (Doc. 1, ¶ 35). A declaration from Scott McCullough, the Director of Human Resources for SCL, demonstrates that each class, as defined by Loonsfoot, exceeds 100 class members. (Doc. 40-1). Loonsfoot, who initially alleged that the proposed class exceeds 100 class members, does not offer any proof refuting Mr. McCullough's declaration. Instead, Loonsfoot relies on the fact that, in answering the Complaint, SCL, the party with "vastly superior access to relevant information", denied the jurisdictional allegations in the Complaint. Plaintiff, however, does not cite to (and the Court is not aware of) any authority establishing that denials in SCL's answer control the Court's determination of jurisdictional facts.

Finally, the allegations in the Complaint and the Declaration of Scott McCullough support a finding that the amount in controversy exceeds $5 million. Pursuant to the Declaration, when Loonsfoot's allegations regarding off the clock work are applied to the putative class members, the alleged amount of unpaid wages totals approximately $2.3 million. (Doc. 40-1 ¶ 8). Approximately $2.15 million of those alleged unpaid wages are subject to the provisions of the IMWL. And, with respect to the IMWL claim, Loonsfoot is seeking treble damages, as well as monthly statutory damages, and attorney's fees.

---

of North Carolina. (Doc. 23) (SCL's sole member, S&N, is incorporated and has its principal place of business in North Carolina).

(Doc. 1, ¶ 157); *see* 820 ILCS 105/12(a). Once the amount of unpaid wages is trebled, the amount in controversy well exceeds $5 million, without even considering monthly statutory damages and attorney's fees.[8] SCL, therefore, has plausibly explained how, when accepting Loonsfoot's claims as true, the amount in controversy exceeds $5 million. Loonsfoot, who once again only points to denials in SCL's answer, has failed to show that such recovery is legally impossible.

## IV. CONCLUSION

Considering the record as a whole, the Court finds that SCL has demonstrated this case satisfies CAFA's minimal diversity, class size, and amount in controversy requirements. Accordingly, the Court has CAFA jurisdiction over the claims in this case.[9] For these reasons, the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 33) is **DENIED**. The Motion for Partial Judgment on the Pleadings (Doc. 29) will be addressed by separate order.

**SO ORDERED.**
Dated: June 3, 2024

s/*David W. Dugan*
DAVID W. DUGAN
United States District Judge

---

[8] In determining whether a suit exceeds the amount-in-controversy threshold, courts consider all damages available to a plaintiff, including compensatory and punitive damages, as well as attorneys' fees. *See Oshana v. Coca–Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (evaluating the propriety of removal under CAFA and considering all of these types of damages in holding that a class action brought under CAFA satisfied the $5 million threshold). The Court further notes that attorney's fees may count toward the amount in controversy when the prevailing party is entitled to recover them as part of damages. *Gardynski–Leschuck v. Ford Motor Co.,* 142 F.3d 955, 956 (7th Cir.1998). If attorney's fees are awarded as part of costs, they may not be counted toward the amount in controversy because then they would fall within the rule that "interest and costs" do not count towards the jurisdictional minimum. 28 U.S.C. § 1332(a); *Gardynski–Leschuck,* 142 F.3d at 956.

[9] Considering the Court's finding as to CAFA jurisdiction, the Court need not resolve SCL's argument as to this Court having original subject matter jurisdiction over Loonsfoot's claims and supplemental jurisdiction over the putative class members' claims.