IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL LOONSFOOT, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>STAKE CENTER LOCATING, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No. 3:23-CV-03171-DWD<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Plaintiff Michael Loonsfoot filed the instant case, a purported class action, seeking to recover unpaid wages and other damages from his former employer, Stake Center Locating, LLC ("SCL"). Plaintiff claims SCL failed to pay employees for compensable "off the clock" work (work employees were allegedly required to complete during their meal breaks, as well as before and after work). In addition, Plaintiff claims SCL paid its employees an allowance for "auto pay," but failed to include that amount in each employee's regular rate of pay for purposes of calculating the appropriate amount of overtime pay. In Count 1, Plaintiff claims that SCL's "off the clock" and "auto pay" practices violate the Illinois Minimum Wage Law ("IMWL") by depriving employees of overtime wages. In Count II, Plaintiff claims that SCL's "off the clock" practice violates the Illinois Wage Payment and Collection Act ("IWPCA") by depriving employees of all their earned wages at the rates agreed to by the parties for all hours worked.

SCL has filed a motion for Partial Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 29), seeking judgment on the pleadings on (1) the IMWL claim, to the extent it is based on a failure to include an automobile reimbursement within the regular rate of pay; and (2) the IWPCA claim, in its entirety.

## I.  APPLICABLE STANDARD

Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is assessed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021). Accordingly, Plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017).

"Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party ... is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). Further, if an affirmative defense "clearly is established in the pleadings…and no question of fact exists, then a judgment on the pleadings may be appropriate. § 1368 Judgment on the Pleadings—Practice Under Rule 12(c), 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (when all

relevant facts are presented, the court may properly grant a Rule 12(c) Motion for Judgment on the Pleadings on the basis of an affirmative defense). However, "when material issues of fact are raised by the answer and the defendant seeks judgment on the pleadings on the basis of this matter, his motion cannot be granted." § 1368 Judgment on the Pleadings—Practice Under Rule 12(c), 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.). *See also* e.g., *Crudup v. Barton,* No. 98 C 1498, 2002 WL 276285, at *4 (N.D. Ill. Feb. 27, 2002).[1]

In ruling on a motion for judgment on the pleadings, the Court may consider "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "Written instrument" is construed broadly to include such things as affidavits, letters, contracts, and loan documents. *Northern Indiana Gun Shows v. City of South Bend,* 163 F.3d 449, 453 (7th Cir.1998); *see also* FED.R.CIV.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). The Court may also consider "information that is subject to proper judicial notice," along with additional facts set forth in Loonsfoot's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th

---

[1] To further explain, under "Rule 7(a), the plaintiff is not required to reply to affirmative defenses or new matter appearing in the answer,[24] and, under Rule 8(b)(6), averments in a pleading to which no responsive pleading is required are considered by the court to have been denied." § 1368 Judgment on the Pleadings— Practice Under Rule 12(c), 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.). Thus, when new facts are raised in an answer, those facts must be taken as denied. In such a scenario, facts alleged in the answer create an issue of material fact that cannot be resolved on a Rule 12(c) motion.

Cir. 2012); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015)."

Ordinarily, Rule 12(d) requires that a Rule 12(c) motion containing materials outside the pleadings must be converted into a motion for summary judgment. However, the Court may consider documents that are attached to a defendant's Rule 12(c) motion *if* "they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

## II. BACKGROUND

SCL is a limited liability company that provides utility locating services to utility owners and operators across the country. (Doc. 1 ¶¶ 39-40). To provide utility locating services to its clients, SCL hires employees to work as Gas Techs, Lead Gas Techs, Utility Locators, Field Managers, and/or Trainers. Loonsfoot is a former SCL employee who worked in various positions in Illinois and Texas from approximately December 2021 until June 2023. (Doc. 1 ¶¶ 41, 44, 45).

SCL classifies Loonsfoot and the Putative Class Members as non-exempt and pays them on an hourly basis. (Doc. 1 ¶ 42). "During the course of their employment, SCL agreed to pay Loonsfoot and each IWPCA Class Member an hourly rate for all the hours of work they performed." (Doc. 1 ¶ 164). Specifically, "SCL agreed to pay Loonsfoot $21.50/hour (plus overtime) for all time worked as a Gas Tech; $25.50/hour (plus overtime) while working as a Trainer; and $26.50/hour (plus overtime) while working as a Lead Gas Tech. SCL requires employees, including Loonsfoot and the Putative Class Members, to perform work-related tasks without pay before and after their official shifts

4

and during the half-hour lunch break employees are required to take for every five hours worked. (Doc. 1 ¶¶ 51-54, 68-78). During their unpaid meal breaks, Loonsfoot and Putative Class members regularly perform work-related tasks, such as completing tickets, driving from one project to another, taking/making calls to SCL's clients, and/or route planning. (Doc. 1 ¶ 74). Loonsfoot and the Putative Class Members are not paid for any off-the-clock work performed before or after shifts or during mandated lunch breaks, and this off-the-clock work is not included in calculating hours worked during the workweek.

As reflected in the employee earning statements[2] SCL attached to its Answer, SCL Utility Locators are subject to an automobile use deduction in each paycheck (listed as a "Vehicle Fringe" on employee earnings statements). Utility Locators also receive a payment for "Vehicle Allowance" as is reflected in employee earnings statements. The Vehicle Allowance is taxed. In all the paystubs attached to SCL's Answer, the Vehicle Fringe is the same amount as the Vehicle Allowance. SCL does not include the Vehicle Allowance when calculating an employee's regular rate of pay for purposes of determining the proper overtime rate.

---

[2] In its 12(c) motion, SCL relies, in part, on earnings statements attached to its Answer. SCL contends this is proper because, when deciding a Rule 12(b)(6) or 12(c) motion, a court may consider documents attached to a *motion* if they are referred to in the plaintiff's complaint and central to his claim. (Doc. 39, p. 2). This is an accurate statement of the law, and it seems to apply here given that the Complaint references the "auto allowance" included in each Utility Locators "paystub," (Doc. 1, ¶ 106) but does not attach the referenced paystubs. However, the Court need not rely on the incorporation by reference doctrine to consider the subject paystubs. The subject paystubs are attached to SCL's a*nswer* (Doc. 21-2) not its *motion.* As such, the paystubs are a written instrument attached to the pleadings and may be considered by the Court. *N. Indiana Gun Shows v. City of South Bend,* 163 F.3d 449, 453 (7th Cir.1998); FED.R.CIV.P. 10(c).

In its Answer (Doc. 21, pp. 23-24, Thirty-Second Affirmative Defense)[3] SCL provides additional information regarding the Vehicle Fringe and Vehicle Allowance reflected in the earning statements. Specifically, SCL alleges as follows: SCL provides Utility Locators company vehicles for the sole purpose of commuting to and from job sites and traveling between jobsites during the workday, and these vehicles are provided for SCL's benefit. Under the IRS' Commuting Rule (Doc. 21-1), the value of a vehicle provided to an employee ($1.50 for each one-way commute), must either be included in an employee's wages or reimbursed by the employee. To comply with this rule, SCL deducts $1.50 for each one-way commute from the Utility Worker's pay for the week – the Vehicle Fringe reflected in the paystubs. However, because this expense is incurred by the Utility Locator for the benefit of SCL, SCL provides a commensurate weekly payment in the amount of the Vehicle Fringe for that week to reimburse the Utility Locators for the deduction – Vehicle Allowance.

### III.   DISCUSSION

**A. Automobile Reimbursement – Vehicle Allowance**

Loonsfoot alleges that the Vehicle Allowance he received from SCL was not included in his regular rate of pay, and that in weeks where he worked more than 40 hours his overtime rate was incorrect under the IMWL. SCL contends that the Vehicle Allowance is not remuneration; it is a paystub line item ensuring that Utility Locators pay taxes on the benefit they receive from their use of a company-owned vehicle as

---

[3] The Answer is part of the pleadings, and as such, the Court may consider facts alleged therein in addressing a Rule 12(c) Motion. However, as is set forth more fully below, any *new* facts raised in SCL's Answer cannot provide a basis for granting SCL's Rule 12(c) motion.

required by the IRS commuting rule. And because the Vehicle Allowance is simultaneously deducted from the paycheck and not included in gross pay, the benefit is never paid. Therefore, it is not remuneration. Additionally, as is discussed more fully below, SCL contends that the Vehicle Allowance – which is related to the use of a company owned vehicle – is properly excluded from the regular rate of pay under the IMWL.

Under the IMWL, an employee must be compensated one and one-half times the regular "rate of pay" for any hours worked in excess of forty hours a week in a given workweek. 820 ILCS 105/4a(1). The IMWL and its regulations do not define regular rate of pay. However, the Illinois Administrative Code provides that the Fair Labor Standards Act of 1938 ("FLSA") regulations are to be used as guidance when interpreting the IMWL. Ill. Admin. Code tit. 56, § 210.120 (2005). *See also* *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir. 1993) (section 207(a)(1) of the FLSA is substantially the same as section 105/4a(1) of the IMWL, and if the FLSA provision is complied with, so too is the IMWL). Consequently, the regular rate of pay is calculated according to the requirements in 29 U.S.C. § 207(e).

Pursuant to § 207(e), the regular rate of pay includes "all remuneration for employment paid to, or on behalf of, the employee." But in calculating the regular rate paid to the employee, the FLSA excludes several categories of payments, including:

> [P]ayments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; *reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer*; and *other similar payments* to an

> employee which are not made as compensation for his hours of employment….

29 U.S.C. § 207(e)(2) (emphasis added). The applicable FLSA regulations provide further guidance as to the types of reimbursements under § 207(e)(2) that are excluded from the "regular rate" calculation. *See* **29 C.F.R**. **§** 778.217. Regarding such reimbursements, the C.F.R. states the following general rule:

> Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses. Payments made by the employer to cover such expenses are not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred). Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.

29 C.F.R. §778.217(a). By way of illustration, § 778.217(b)(3) states that transportation and living expenses incurred by an employee who is travelling "over the road" on his employer's business are expenses which primarily benefit the employer and "will not generally be regarded as part of the employee's regular rate."

The regulation makes clear that not all payments for travel expenses incurred by an employee are excluded from the employee's regular rate of pay. Section 778.217(d) explains:

> The expenses for which reimbursement is made must in order to merit exclusion from the regular rate under this section, be expenses incurred by the employee on the employer's behalf or for his benefit or convenience. *If the employer reimburses the employee for expenses normally incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate thereby. An employee normally incurs expenses in traveling to and from work*, buying lunch, paying rent, and the like. If the employer reimburses him for these normal everyday expenses, the payment is not excluded from the

8

regular rate as "reimbursement for expenses." Whether the employer "reimburses" the employee for such expenses or furnishes the facilities (such as free lunches or free housing), the amount paid to the employee (or the reasonable cost to the employer or fair value where facilities are furnished) enters into the regular rate of pay as discussed in § 778.116.

29 C.F.R. §778.217(d) (emphasis added).

SCL asserts that the Vehicle Allowance paid to Utility Locators was not compensation for employment but, instead, reasonable reimbursement for an expense "incurred by an employee in the furtherance of his employer's interests." According to SCL, because the reimbursement is for a company vehicle as opposed to a personal vehicle, it is necessarily an expense incurred by the employee on the employer's behalf or for the employer's benefit or convenience.

Loonsfoot contends, amongst other things, that under Section 778.217(d), the Vehicle Allowance is reimbursement for "expenses normally incurred by the employee for his own benefit." 29 C.F.R. § 778.217(d). In support of this argument, Loonsfoot cites to *Howe v. Hoffman-Curtis Partners Ltd.* LLP, 2005 WL 6443877 (S.D. Tex. July 6, 2005)). In *Howe*, the employer provided the employee a $10,000 car allowance, "intended to compensate [the employee] for her trip to and from work, because she lived far from work." *Id.* at *2. Relying on 29 C.F.R. §778.217(d), the district court concluded that, because the car allowance was renumeration for expenses in traveling to and from work, it must be included in calculating the employee's regular rate of pay, and so too her overtime.

SCL contends that *Howe* is distinguishable and that the "critical" distinction pertains to use of a personal vehicle as opposed to use of a company vehicle. According

9

to SCL, in *Howe* the employee was provided a car allowance by his employer to compensate him for commuting to and from work in his personal vehicle, with no benefit to the employer. But in this case, SCL argues, "commuting vehicles are provided to employees for the benefit of their employer." (Doc. 39).

The problem for SCL is that, for the Court to resolve SCL's arguments regarding (1) the lack of any payment to the Utility Locators because the Vehicle Allowance is merely a line item necessitated by IRS regulations for the use of a company vehicle or (2) the Vehicle Allowance being properly excludable from the regular rate of pay because the vehicles are company-owned vehicles provided for SCL's benefit, the Court must consider new facts contained in SCL's Answer. That is, the building blocks of SCL's arguments (i.e. the Vehicle Allowance is issued in connection with Utility Locator's use of a company-owned vehicle for transportation to and from work and between jobsites; that the company-owned vehicle is for the benefit of SCL; and/or that the Vehicle Allowance is not remuneration but instead a line item to comply with the IRS's Commuter Rule, having a net zero effect on wages),[4] are new facts asserted in SCL's answer.[5] Under Rule 7(a), Loonsfoot was not required without Court order to reply to

---

[4] The weekly earnings statements reveal that each paycheck includes a vehicle deduction and a vehicle payment – always for the same amount. The Court, however, cannot definitively conclude that the Utility Locators never received the vehicle payment, meaning it is not remuneration, without relying on the additional facts asserted in SCL's Answer and affirmative defense. Thus, while this argument may be persuasive at the summary judgment stage, *see* e.g., *Barb v. Heath Consultants, Inc.*, No. 1:23CV00058, 2024 WL 3292835 (W.D. Va. July 3, 2024) (granting motion for partial summary judgment as to substantially identical claim, finding the vehicle payment, which was required by Internal Revenue Service regulations, was not remuneration), it cannot provide a basis for granting SCL's Rule 12(c) motion.
[5] SCL also asserts new facts in its Reply to bolster the claim that the use of a company-owned vehicle is only for SCL's benefit. Specifically, SCL states that it receives a benefit "by having its employees driving branded vehicles and being able to travel straight from home to their first jobsite each day." These newly alleged facts, of course, are not part of the pleadings and may not be considered in a Rule 12(c) motion.

SCL's Answer and affirmative defense, and, as such, SCL's new averments must be taken as denied. FED. R. CIV. P. 8(d). Consequently, material issues of fact are presented by the pleadings. SCL's arguments may well carry the day at summary judgment, *see* e.g., *Barb v. Heath Consultants, Inc.*, No. 1:23CV00058, 2024 WL 3292835 (W.D. Va. July 3, 2024) (granting motion for partial summary judgment as to substantially identical claim, finding the vehicle payment was properly excludable from the regular rate of pay), but the Court cannot grant judgment on the pleadings on the basis of new matters asserted in SCL's Answer. Accordingly SCL's motion for judgment on the pleadings as to Plaintiff's IMWL claim, to the extent that it is based on the Vehicle Allowance, is **DENIED**.

### B. Existence of an Agreement

Plaintiff claims SCL's "off the clock" practice violates the IWPCA by depriving employees of all their earned wages at the rates agreed to by the parties for all hours worked. Specifically, Loonsfoot claims that he and the Putative Class Members are not paid for any off-the-clock work performed before or after their shifts or during mandated lunch breaks, and that this off-the-clock work is not included in calculating hours worked during the workweek, in violation of the IWPCA.

In support of this claim, Loonsfoot alleges that "[d]uring the course of their employment, SCL agreed to pay Loonsfoot and each IWPCA Class Member an hourly rate for all the hours of work they performed." (Doc. 1, ¶ 164). Loonsfoot further alleges that he "and each IWPCA Class Member accepted SCL's offer." (Doc. 1, ¶ 65). SCL

11

contends these allegations fail as a matter of law because they do not plead the existence of an agreement that would support Loonsfoot's particular claims under the IWPCA.

To state a claim under the IWPCA, Loonsfoot must plead that SCL owes him wages under an employment contract or agreement. 820 Ill. Comp. Stat. 115/2; *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016). "An 'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract." *Zabinsky v. Gelber Group, Inc.*, 347 807 N.E.2d 666, 671 (Ill. App. Ct. 2004), citing Black's Law Dictionary 35 (abridged 5th ed.1983) and Restatement (Second) of Contracts § 3, Comment *a,* at 13 (1981). Because an employment contract is not necessary under the IWPCA, "a worker seeking to recover under it does not need to plead all contract elements if she can plead facts showing mutual assent to terms that support the recovery." *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 827 N.E.2d 1051, 1068 (Ill. App. Ct. 2005). However, the IWPCA "provides no substantive relief beyond what the underlying employment contract requires." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016). Thus, the IWPCA holds the employer only to its promise under the employment agreement."*Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021). *See also Id.* at 624-25 ("It is not enough to allege "the existence of *any* employment contract or agreement": [employees] must allege the existence of a contract or agreement that specifically gives [employees] a right to the wages they seek'") (citing *Dominguez v. Micro Ctr. Sales Corp.*, No. 11-cv-8202, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012)); *Id.* at 624 ("It is well established that an employee can have no claim

12

under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the *particular* work allegedly performed.") (citing *Brown v. Lululemon Athletica, Inc.*, No. 10-cv-05672, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011) ) (emphasis added).

Applying these standards, numerous district courts have concluded that conclusory allegations that an employer agreed to pay an employee an agreed upon hourly rate for all hours of work performed, are insufficient to support a claim that an employer failed to pay an employee for off-the-clock work before or after work and/or during unpaid meal breaks. *See* e.g., *Gomez v. El-Milagro, Inc.*, No. 23 C 1606, 2023 WL 7418833 (N.D. Ill. Oct. 18, 2023) (alleged agreement to compensate plaintiff $16.75 per hour for each hour worked, except that defendant would deduct a thirty-minute lunch break, did not support IWPCA claim for failure to compensate employees for work performed during otherwise unpaid lunch breaks); *Brashear v. SSM Health Care Corp.*, No. 4:22-CV-00569-SRC, 2022 WL 17987041 (E.D. Mo. Dec. 29, 2022) (granting motion to dismiss IWPCA claim, finding plaintiff's allegations that "[defendant] agreed to pay plaintiff a mutually agreed upon hourly rate for each and every hour worked," did not suggest that defendant agreed to pay plaintiff for work performed during unpaid meal breaks, and complaint failed to include facts that would allow the court to infer the defendant otherwise assented to pay plaintiff for working during designated meal breaks); *Hoffman v. RoadLink Workforce Sols., LLC*, No. 12 C 7323, 2014 WL 3808938 (N.D. Ill. Aug. 1, 2014) (allegation that defendants agreed to pay plaintiffs "for all hours worked at the rates agreed to by the parties" did not suggest that defendants agreed to pay

13

plaintiffs for pre and post shift off-the-clock work). *See also Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021) (contract that provided police officers would be compensated for all approved overtime insufficient to suggest that there was an agreement to compensate officers for off-duty time spent transporting, unloading, and securing their equipment inside their residences; officers failed to allege the existence of a contract or agreement that "specifically" gave them a right to wages for the specified off-the-clock activities).

Like the plaintiffs in the above-referenced cases, Loonsfoot alleges that "SCL agreed to pay Loonsfoot and each IWPCA Class Member an hourly rate for all the hours of work they performed." (Doc. 1, ¶ 164). But the alleged agreement does not allege *any* terms that "specifically gives [Loonsfoot] a right to the wages [he] seek[s]" – payment for off-the-clock work performed before or after work and during otherwise unpaid meal breaks. *Chagoya*, 992 F.3d at 624. Loonsfoot argues his Complaint is distinguishable because he also alleges that "SCL agreed to pay Loonsfoot $21.50/hour (plus overtime) for all time worked as a Gas Tech; $25.50/hour (plus overtime) while working as a Trainer; and $26.50/hour (plus overtime) while working as a Lead Gas Tech." (Doc. 35, p. 5). But this allegation only establishes the agreed-upon *rate*. It does not establish a "manifestation" of mutual assent to pay Loonsfoot for off-the-clock work. *See Landers-Scelfo*, 827 N.E.2d at 1059. *See* also *Brown v. Lululemon Athletica, Inc.*, No. 10 C 05672, 2011 WL 741254, *3 (N.D. Ill. Feb. 24, 2011) ("It is well established that an employee can have no claim under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the *particular* work allegedly performed." (emphasis

14

added) (collecting cases)). Nor do any facts otherwise alleged support an inference that SCL agreed to pay Loonsfoot for off-the-clock work. In fact, the facts alleged suggest the opposite. Loonsfoot alleges that he worked for SCL for approximately a year and a half, and that during this time, SCL never paid him or the Putative Class Members for work performed during meal breaks or for work performed before and after work. Further, there is no allegation that Loonsfoot or the Putative Class Members protested this practice. This suggests that Loonsfoot and the putative class members assented to SCL's practice of not paying them for off-the-clock work.[6] *See Landers-Scelfo*, 827 N.E.2d at 1059 ("an employer and an employee, by acting in a manner consistent with an employment agreement, can set the material terms of the agreement...."). *See also Brashear*, 2022 WL 17987041, *4 (complaint that alleged employer had a practice of not paying plaintiff for work performed during unpaid meal breaks but did not allege that plaintiff ever challenged this practice, suggested assent to the practice).

For these reasons, the Court finds that Loonsfoot fails to state an IWPCA claim. Accordingly, Plaintiff's IWPCA claim (Count 2) is **DISMISSED** without prejudice.

---

[6] To be clear, the Court is not making a finding that Loonsfoot and the Putative Class Members assented to this practice. The Court is merely noting that the Complaint, as currently pled, does not support an inference that there was an implicit agreement entitling Loonsfoot and the Putative Class Members to compensation for off-the-clock work; it actually suggests the opposite.

## IV. Disposition

Stake Center Locating, LLC's Motion for Partial Judgment on the Pleadings as to Michael Loonsfoot's IMWL claim (Count 1) is **DENIED**. Defendant's Motion for Partial Judgment on the Pleadings as to Plaintiff's IWPCA claim (Count 2) is **GRANTED**. Plaintiff's IWPCA claim (Count 2) is **DISMISSED** without prejudice.

**SO ORDERED.**

Dated: July 29, 2024

DAVID W. DUGAN
United States District Judge